VIRLEE KOVACHICH *v.* DEPARTMENT OF MENTAL
HEALTH AND ADDICTION SERVICES
(SC 20518)

Robinson, C. J., and McDonald, Mullins,
Kahn, Ecker and Keller, Js.

*Syllabus*

The plaintiff, who was employed as a nurse by the defendant, the Department
of Mental Health and Addiction Services, sought to recover damages
for employment discrimination and retaliation, in violation of the Con-
necticut Fair Employment Practices Act (CFEPA) (§ 46a-51 et seq.). The
plaintiff was diagnosed with allergic and nonallergic rhinitis and asthma
and began experiencing debilitating reactions when exposed to scents.
As a result, she requested, and the committee tasked with reviewing
requests for accommodation pursuant to the Americans with Disabilities
Act of 1990 (ADA) (42 U.S.C. § 12101 et seq.) on behalf of the defendant
approved, certain workplace accommodations, including designating
the unit to which the plaintiff was assigned as a scent-free environment
and providing a high efficiency particulate air filtration system for that
unit. Some employees failed to comply with the scent-free designation,
and, to avoid adverse reactions, the plaintiff would use fans to disperse
scents and seek refuge in an office that was free of scents. The plaintiff's
attorney subsequently requested a meeting with the defendant in order
to engage in the informal, interactive process required by CFEPA, pursu-
ant to which the employee and the employer are to identify the precise
limitations resulting from the employee's disability and potential, reason-
able accommodations for those limitations. The chairperson of the ADA
review committee met with the plaintiff and her attorney, but, with
limited exceptions, the defendant took no additional measures to enforce
the scent-free designation. After filing a complaint with and obtaining
a release of jurisdiction from the Commission on Human Rights and
Opportunities (CHRO), the plaintiff commenced the present action,
alleging unlawful employment discrimination on the basis of her disabil-
ity. While the case was pending, the defendant updated its scent exposure
protocols, and those updates prohibited the plaintiff from using fans or
seeking refuge in the office that was free of scents. The plaintiff's attor-
ney thereafter notified the ADA review committee of the defendant's
refusal to provide the accommodations that the committee previously
had approved, requested certain reasonable accommodations, and indi-
cated her willingness to meet. The defendant did not meet with the
plaintiff or her attorney but, instead, notified the plaintiff that her
requested accommodations had been denied, except for the provision
of a portable air filtration system. The plaintiff subsequently retired on
the basis of the defendant's failure to provide reasonable accommoda-

Kovachich *v.* Dept. of Mental Health & Addiction Services

tions. After receiving another release of jurisdiction from CHRO, the plaintiff amended her complaint to include claims that the defendant had failed to engage in the good faith interactive process required by CFEPA, that the defendant retaliated against her for filing a disability discrimination complaint, and that she had been constructively discharged because of her disability. During a court trial, the plaintiff sought to introduce into evidence three exhibits containing certain emails between the plaintiff's attorney and the defendant's attorney, and a letter the plaintiff's attorney sent to a CHRO investigator and copied to the defendant's attorney. In those communications, the plaintiff's attorney addressed recent instances of scent exposures, proposed various policies, and clarified and sought a meeting to discuss the plaintiff's requested accommodations. The defendant's attorney objected to the admission of those communications, arguing, inter alia, that they pertained to settlement discussions before CHRO and, therefore, were inadmissible. The trial court overruled the objection. Over the hearsay objection of the defendant's attorney, the court also admitted into evidence an exhibit containing emails between the plaintiff and two union delegates regarding coworkers who did not comply with the scent-free designation. Thereafter, the trial court rendered judgment for the plaintiff, concluding that the defendant had failed to provide the plaintiff with the reasonable accommodations afforded by the ADA review committee and that the good faith interactive process required by CFEPA did not continue after the correspondence from the plaintiff's attorney to the defendant's attorney. The Appellate Court reversed the trial court's judgment, concluding that the communications between the plaintiff's attorney, the defendant's attorney, and the CHRO investigator improperly were admitted into evidence under the applicable provision (§ 4-8) of the Connecticut Code of Evidence because the letters and emails constituted settlement communications that occurred within the context of CHRO's mandatory mediation program. That court also concluded that the improper admission of those exhibits had prejudiced the defendant because they were the basis for the trial court's finding that the defendant had failed to engage in the interactive process. The Appellate Court also concluded that the trial court improperly had precluded the defendant from cross-examining the plaintiff regarding her original deposition testimony, which she subsequently amended through an errata sheet, and improperly had admitted the exhibit containing the union delegates' statements under the hearsay exception for admissions by a party opponent without first determining whether the statements related to a matter within the scope of their employment. Because a new trial was required on the basis of the improperly admitted exhibits, however, the Appellate Court did not address whether those additional evidentiary errors were harmful. On the granting of certification, the plaintiff appealed to this court. *Held*:

Kovachich *v.* Dept. of Mental Health & Addiction Services

1. The Appellate Court incorrectly concluded that the communications between the plaintiff's attorney, the defendant's attorney, and the CHRO investigator improperly were admitted into evidence under § 4-8 of the Connecticut Code of Evidence on the ground that they constituted settlement communications between the parties, and, therefore, that court improperly reversed the trial court's judgment: once an employee initiates the informal, interactive process required by CFEPA, the employer must make a good faith effort to participate in discussion, and, although evidence of an offer to compromise or to settle a disputed claim is inadmissible on the issues of liability and damages, such evidence may be admissible under § 4-8 (b) (1) if it is offered "for another purpose," including, under the appropriate circumstances, for the purpose of establishing a party's initiation of or participation in the good faith interactive process, or for the purpose of demonstrating a party's failure to communicate with the opposing party by way of initiation or response; in the present case, regardless of whether the communications at issue constituted offers to settle or compromise the plaintiff's claims, they were admissible as evidence of the defendant's failure to engage in the good faith interactive process, which, as the defendant acknowledged, was an ongoing process that continued during the course of the plaintiff's employment and after she filed her complaint alleging disability discrimination; moreover, contrary to the defendant's claim that the communications were offered for the purpose of demonstrating its liability, the trial court did not rely on them to find that the defendant engaged in discrimination, and nothing in the record suggested that the communications occurred within the context of CHRO's mandatory mediation program rather than as part of CHRO's investigative efforts; accordingly, given the content of the communications, in which the plaintiff's attorney repeatedly suggested various polices for dealing with scents in the workplace and sought meetings to discuss issues regarding reasonable accommodations for the plaintiff's disability, the trial court did not abuse its discretion in admitting those communications for the purpose of establishing the plaintiff's participation in the good faith interactive process and the defendant's failure to continue to participate in that process by way of response.

2. The defendant could not prevail on its claim that the Appellate Court's judgment could be affirmed on the alternative ground that the other evidentiary errors identified by that court were harmful to the defendant: considering the totality of the evidence, this court could not conclude that the improper exclusion of the plaintiff's original deposition testimony, which subsequently had been amended by way of an errata sheet, affected the outcome of the trial, as the defendant's attorney cross-examined the plaintiff extensively and was permitted to inquire into the subjects of those amendments, including the extent of the plaintiff's disability and the efficacy of the accommodations provided; moreover, the defendant did not dispute at trial that the plaintiff was disabled and

Kovachich *v.* Dept. of Mental Health & Addiction Services

entitled to reasonable accommodations but, instead, focused on the reasonableness and effectiveness of the accommodations that it provided; furthermore, the union delegates' hearsay statements were cumulative of other evidence that was properly admitted and that was largely uncontested at trial, including the delegates' in-court testimony regarding certain employees who repeatedly disregarded the scent-free designation, the minutes from various ADA review committee meetings documenting the recurrent problem with scent exposures in the plaintiff's workplace, the testimony of the plaintiff's former supervisor regarding frustrations with and incidents involving certain staff who disregarded the scent-free designation, and emails and incident reports memorializing those incidents.

(*One justice dissenting*)

Argued January 19—officially released September 27, 2022

*Procedural History*

Action to recover damages for, inter alia, alleged employment discrimination, and for other relief, brought to the Superior Court in the judicial district of New London, where the case was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee, who, exercising the powers of the Superior Court, rendered judgment for the plaintiff, from which the defendant appealed and the plaintiff cross appealed to the Appellate Court, *Alvord*, *Moll* and *Norcott*, *Js.*, which reversed the trial court's judgment and remanded the case for a new trial, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Wesley W. Horton*, with whom was *Jacques J. Parenteau*, for the appellant (plaintiff).

*Clare Kindall*, solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (defendant).

*Michael E. Roberts*, human rights attorney, filed a brief for the Commission on Human Rights and Opportunities as amicus curiae.

Kovachich *v.* Dept. of Mental Health & Addiction Services

*Opinion*

ECKER, J. Following a bench trial, the trial court rendered judgment for the plaintiff, Virlee Kovachich, finding that the defendant, the Department of Mental Health and Addiction Services, had discriminated against her during the course of her employment by failing to provide reasonable accommodations for her disability, in violation of the Connecticut Fair Employment Practices Act (CFEPA), General Statutes § 46a-60 (b) (1).[1] The court also found that the defendant had retaliated against the plaintiff for filing a complaint with the Commission on Human Rights and Opportunities (commission) by constructively discharging her from her employment, in violation of § 46a-60 (b) (4). The Appellate Court reversed the judgment of the trial court on the ground that it improperly had admitted into evidence written settlement communications in violation of § 4-8 of the Connecticut Code of Evidence,[2] which caused substantial prejudice to the defendant.

[1] General Statutes § 46a-60 (b) provides in relevant part: "It shall be a discriminatory practice in violation of this section:

"(1) For an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment any individual or to discriminate against such individual in compensation or terms, conditions or privileges of employment because of the individual's . . . physical disability . . .

\* \* \*

(4) For any person, employer, labor organization or employment agency to discharge, expel or otherwise discriminate against any person because such person has opposed any discriminatory employment practice or because such person has filed a complaint or testified or assisted in any proceeding under section 46a-82, 46a-83 or 46a-84 . . . ."

[2] Section 4-8 of the Connecticut Code of Evidence provides: "(a) General rule. Evidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim.

"(b) Exceptions. This rule does not require the exclusion of:

"(1) Evidence that is offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution, or

"(2) statements of fact or admissions of liability made by a party."

Kovachich *v.* Dept. of Mental Health & Addiction Services

See *Kovachich* v. *Dept. of Mental Health & Addiction Services*, 199 Conn. App. 332, 352–53, 236 A.3d 219 (2020). The Appellate Court also identified other evidentiary errors that were likely to arise on remand. See id., 353–67.

We granted the plaintiff's petition for certification to appeal to determine whether (1) the written communications improperly were admitted into evidence under § 4-8 of the Connecticut Code of Evidence, (2) the defendant suffered substantial prejudice as a result, and (3) any of the other evidentiary errors identified by the Appellate Court were harmful. See *Kovachich* v. *Dept. of Mental Health & Addiction Services*, 335 Conn. 958, 958–59, 239 A.3d 320 (2020). We conclude that the trial court did not abuse its discretion in admitting the written communications into evidence and that the other evidentiary errors identified by the Appellate Court were harmless. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court's opinion sets forth the following facts, which we supplement as necessary with additional undisputed facts. "The plaintiff worked as a licensed practical nurse [LPN] for the defendant and primarily was assigned to the Brief Care Unit of the Southeastern Mental Health Authority (SMHA). At some point during her employment with the defendant, the plaintiff began experiencing reactions to scents. On January 24, 2011, the plaintiff submitted to the defendant a medical provider report from her physician, Doron J. Ber, which stated that she 'has allergic and [nonallergic] rhinitis and asthma. These conditions are intermittent, but can be 100 [percent] debilitating.' The plaintiff requested from the defendant accommodations in the form of a '[scent-free] work environment' and a '[high efficiency particulate air (HEPA)] filter for the office.' " *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 334–35.

Kovachich *v.* Dept. of Mental Health & Addiction Services

In an April 14, 2011 letter, Tommy Wilson, the chairperson of the defendant's ADA review committee—which is tasked with reviewing requests for accommodation pursuant to the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq.—notified the plaintiff that the review committee had determined that she has "a qualifying disability under [the] ADA" and that her request for a reasonable accommodation had been approved. The review committee provided the plaintiff with the following reasonable accommodations: "1. Upon admission to the [B]rief [C]are [U]nit all clients are to turn over all aerosol sprays to be locked up and inventoried by staff with their personal belongings. Upon being discharged from the [B]rief [C]are [U]nit all inventoried aerosol sprays along with their belongings are to be returned. 2. That the scent-free working environment signs remain up on the unit and that all staff is notified of the scent-free environment and what that means. 3. To notify any overtime staff that the [B]rief [C]are [U]nit is scent-free. 4. The [defendant] is to provide a working air filtration system with a HEPA filter; the filter system can be the existing filter system or a portable unit that is able to filter the entire [B]rief [C]are office area. The nurse's station is 294 square feet and the entire unit is 8470 square feet."

Despite these accommodations, some employees failed to comply with the scent-free working environment designation.[3] As a result, the plaintiff was exposed to scents while working at SMHA, which exacerbated her rhinitis and asthma and, on multiple occasions, triggered the need for emergency medical treatment. To avoid adverse reactions when she detected a scent in the workplace, the plaintiff often would operate fans to disperse the scent, wear a mask, or remove herself

_____

[3] Noncompliance was not limited to the defendant's employees. Some patients on and visitors to the Brief Care Unit also failed to abide by the scent-free designation.

Kovachich *v.* Dept. of Mental Health & Addiction Services

from the scented environment by seeking refuge in the scheduler's office.

The plaintiff retained counsel, who sent a letter dated February 1, 2012, to Cheryl Jacques, the director of SMHA. In the letter, the plaintiff's counsel sought "to engage in an interactive process with respect [to] the provision of reasonable accommodations for [the plaintiff's] disability and [to] ensur[e] that she is adequately protected in the workplace."[4] The plaintiff's counsel informed Jacques of the "continued exposure that [the plaintiff] has experienced as a result of her fellow [employees'] failing to comply with [fragrance free] requirements in the workplace, whether [wilfully] or mistakenly," and requested "a meeting to discuss a number of concerns and potential accommodations that can be made to address those concerns."

A meeting was held on April 3, 2012, attended by the plaintiff, her counsel, Wilson, and Human Resources Director Theresa Tiska. The attendees discussed the plaintiff's requests that the defendant provide coworkers with "a notice [of the fragrance free requirement] on the Brief Care Unit overtime sign-up sheet, provide educational materials to coworkers, and take additional action to enforce the scent-free working environment." *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 336. As a result of this meeting, a notice was placed on the overtime sign-up sheet informing employees that the Brief Care Unit was scent-free. With limited exceptions, however, no additional measures were taken to educate the workforce

_____

[4] As explained in more detail in part I of this opinion, CFEPA imposes a duty on an employee and employer to "engage in an informal, interactive process . . . [to] identify the precise limitations resulting from [an employee's] disability and potential reasonable accommodations that could overcome those limitations." (Internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 416, 944 A.2d 925 (2008).

Kovachich *v.* Dept. of Mental Health & Addiction Services

or to enforce the scent-free designation by means of workforce discipline.[5]

On April 13, 2012, the plaintiff filed a complaint with the commission, alleging that she had been "denied reasonable accommodation on the basis of a disability . . . ." The commission thereafter issued a release of jurisdiction, and, in October, 2013, the plaintiff commenced the present action alleging disability discrimination in violation of § 46a-60 (b) (1).

On November 1, 2013, Catherine Girard became the behavioral health clinical manager of the Brief Care Unit at SMHA. At the instruction of Jacques, Girard asked the plaintiff's supervisors, Sharon Reilly and Douglas Fontaine, to provide "a detailed synopsis of the dates and times the [plaintiff] has left the [Brief Care] [U]nit and was unable to work any period of time; over the past two weeks, three months, sixth months . . . with as much specificity as possible." After compiling this data and speaking to more than "fifteen employees throughout the agency . . . to gather additional data outside of Brief Care" regarding the plaintiff, Girard asked Jacques to transfer the plaintiff from the Brief Care Unit.

Girard subsequently informed the plaintiff that she was expected to follow updated "[s]cent [e]xposure [p]rotocol[s] . . . ." The updated scent exposure protocols provided: "1. Shift report attendance in the [c]hart room with the [t]eam is required, without exception. 2. If a scent exposure occurs and you are too ill to continue working in your role as LPN, then you are expected to go home. Taking refuge in the [s]cheduler's

---

[5] The defendant's efforts to educate the workforce were limited to the inclusion of a slide in its employee orientation training materials and an August 28, 2013 email containing "some education about the impact of scents/fragrances." With respect to discipline, no employee was disciplined for violating the scent-free policy, although one employee was formally counseled.

Kovachich *v.* Dept. of Mental Health & Addiction Services

office is no longer permissible. 3. The [h]ead [n]urse or [c]harge [n]urse must be informed of the reason why you are leaving a shift early. This information will then be conveyed by the nurse via [voicemail] to . . . Girard . . . . 4. Use of fans on [the] Brief Care [Unit] is no longer permissible for scent exposures, as this creates temperature discomfort for clients and employees on the unit.''

In an email dated February 7, 2014, the plaintiff informed Wilson that the defendant was ''refusing to provide [the] reasonable accommodations for [her] disability [that] were previously provided'' and requested ''the following reasonable accommodations for [her] disability: 1. The use of a fan when there is a scent that affects [her]. 2. [Access] to a safe room where [she] can work away from others if needed. 3. Overtime makeup if [she has] to leave due to a scent exposure when on duty or if [she has] to cancel overtime due to a scent illness. 4. Mandating [scent-free] classes, providing [her] with the same educational opportunities as others. 5. Enforcement of the [scent-free] restriction on [the] Brief Care [Unit]. 6. A portable HEPA filter for the chart office. 7. Allowing [her] to participate in report by use of speaker phone from a [scent-free] room. 8. An exemption from deployment off [the] Brief Care [Unit] to other programs should the need arise.'' The plaintiff stated that she was ''happy to meet with the [ADA review committee] with [her] attorney to discuss.'' In support of her request, the plaintiff provided the defendant with an updated medical certificate from her physician, which provided in relevant part that the plaintiff ''has asthma [and] vocal cord dysfunction, which are both actively responsive to scents/smells. Please arrange that her coworkers do not wear heavy perfumes.''

Wilson never met with the plaintiff or her attorney to discuss the plaintiff's requested accommodations. Two months later, Wilson informed the plaintiff that,

Kovachich *v.* Dept. of Mental Health & Addiction Services

with the exception of a portable HEPA filter for the chart office, her requested accommodations were denied.

Due to the defendant's failure to provide reasonable accommodations for her disability, the plaintiff retired effective June 1, 2014. On that same date, the plaintiff filed a complaint with the commission alleging retaliation, for which she subsequently received a release of jurisdiction. Thereafter, the plaintiff amended her complaint in the present action to include an allegation of retaliation in violation of § 46a-60 (b) (4) of CFEPA. The plaintiff's amended complaint alleged in relevant part that the defendant "has retaliated against [her] for filing a complaint of disability discrimination, has failed to engage in a good faith interactive process, and has failed to accommodate her disability." The plaintiff also alleged that she "has been constructively discharged because of her disability." In her two count amended complaint alleging employment discrimination and retaliation, the plaintiff sought "damages, including, but not limited to, loss of wages, loss of enjoyment of life, emotional distress, and attorney's fees and costs."

The case was tried to the court, *Hon. Joseph Q. Koletsky*, judge trial referee, in March and April, 2018. During the fourteen day trial, the plaintiff adduced a voluminous amount of evidence regarding the extent of her disability, her multiple requests for accommodation, the adequacy of the defendant's response, and her repeated exposure to scents during her employment with the defendant. In addition to the testimony of the plaintiff, the trial court heard from many of her day-to-day coworkers, all of whom corroborated the plaintiff's testimony regarding the frequency and severity of her exposure to scents while working on the Brief Care Unit. The defendant did not proffer any evidence to challenge or rebut the existence of the plaintiff's disability or the need to provide her with reasonable accommo-

Kovachich *v.* Dept. of Mental Health & Addiction Services

dations under CFEPA. Instead, the defendant focused on the reasonableness and effectiveness of the accommodations provided, arguing that they were sufficient to fulfill its obligation to accommodate the plaintiff's disability in accordance with CFEPA.

The claims of error raised on appeal relate to certain evidentiary rulings made by the trial court. Prior to trial, the defendant filed a motion in limine seeking to exclude from evidence "documents regarding offers to compromise the disputed claims engaged in as part of the [the commission's] mediation process . . . ." The defendant claimed that "[t]hese communications were part of a settlement process that is required by statute, [General Statutes] § 46a-8,"[6] and, therefore, were inad-

---

[6] Although the defendant cited § 46a-8 in its motion, it quoted General Statutes § 46a-83 (d), which provides that, "[n]ot later than sixty days after the date of sending notice that a complaint has been retained after a case assessment review, the executive director or the executive director's designee shall assign an investigator or commission legal counsel to hold a mandatory mediation conference. A mediation conference may but need not be held if the commission has held a pre-answer conciliation conference. The investigator or commission legal counsel assigned to conduct the mediation shall not be assigned to investigate the complaint. The mandatory mediation conference may not be scheduled for the same time as a fact-finding conference held pursuant to subsection (f) of this section. The mediator may hold additional mediation conferences to accommodate settlement discussions."

We note that § 46a-83 was amended effective October 1, 2015. The version of the statute in effect when the plaintiff's complaint was pending before the commission provided that, "[i]f a complaint is not dismissed after the merit assessment review pursuant to subsection (b) of this section or if a complaint is reinstated after legal review pursuant to said subsection (b), the executive director or the executive director's designee shall assign an investigator or commission legal counsel to hold a mandatory mediation conference within sixty days of sending notice of action taken pursuant to the merit assessment review or legal review. The mandatory mediation conference may be scheduled for the same time as a fact-finding conference held pursuant to subsection (d) of this section. The mediator may hold additional mediation conferences to accommodate settlement discussions." General Statutes (Supp. 2012) § 46a-83 (c) (1), as amended by Public Acts, Spec. Sess., June, 2012, No. 12-2, § 78. Nothing in the prior version of the statute prevented the mediator assigned to preside over a mandatory mediation conference from also being assigned to investigate the complaint. See

Kovachich *v.* Dept. of Mental Health & Addiction Services

missible under § 4-8 of the Connecticut Code of Evidence. The trial court reserved ruling on the defendant's motion in limine until the time of trial.

At trial, "the plaintiff's counsel sought to introduce into evidence an April 29, 2013 [email] from the plaintiff's counsel to Assistant Attorney General Jill Lacedonia (exhibit 13). Exhibit 13, which has a subject line stating 'RE: Kovachich—request for demand,' asks to arrange a time to talk, mentions certain issues on which the parties purportedly reached agreement 'at the last mediation session,' attaches information regarding policies adopted by certain employers regarding scent-free working environments, and discusses the state of the law surrounding scent-free working environments. It concludes by stating: 'In any event if you are willing to work with me to find a solution then we can see if litigation can be avoided. I am available on Friday.' " *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 341–42.

The plaintiff testified that her "understanding of the purpose of" the email was that she and her attorney "were working together to provide this information so that [they] could have a discussion and possibly come up with a solution, or to work on a solution." The plaintiff's counsel moved to admit exhibit 13 "for the purpose stated, that it was compiled by her attorney for the purpose of providing it to the [defendant]." The

General Statutes § 46a-83 (f) ("Not later than fifteen days after the date of . . . a mandatory mediation conference that fails to resolve a complaint . . . the executive director or the executive director's designee shall assign an investigator to process the complaint. The investigator may process the complaint by any lawful means of finding facts, including, but not limited to, a fact-finding conference, individual witness interviews, requests for voluntary disclosure of information, subpoenas of witnesses or documents, requests for admission of facts, interrogatories, site visits or any combination of these means for the purpose of determining whether there is reasonable cause for believing that a discriminatory practice has been or is being committed as alleged in the complaint.").

Kovachich *v.* Dept. of Mental Health & Addiction Services

trial court asked whether it was offered "[f]or the truth," and the plaintiff's counsel responded: "Nope, for the purpose of communication."

The defendant's counsel objected to the admission of exhibit 13, arguing in relevant part that "this is a sum demand . . . and, pursuant to [General Statutes §] 46a-86, these are not supposed to be entered into evidence." The trial court asked the defendant's counsel to repeat the statutory citation, and she clarified that exhibit 13 was inadmissible under "[s]ubsection (d)" of § 46a-86. The trial court proceeded to read aloud what it understood to be the relevant portion of that statutory provision to ensure that it understood the objection: "The presiding officer shall file with the commission and serve on the respondent an order requiring the respondent to pay the complainant the damages resulting from the discriminatory practices." The trial court then asked the defendant's counsel, "[i]s that what you're claiming?" The defendant's counsel stated that she "must have written the wrong section" and suggested that "[i]t must be under [General Statutes §] 46a-85." The trial court responded "I don't think so" and informed the defendant's counsel that it was "not gonna waste any more time. This is your last third strike to give [the court] a statutory basis for the claim. Go ahead. Take all the time you want, but do it just once." At this point, the defendant's counsel asked: "May I switch, Your Honor, since I was incorrect, to Tait and LaPlante and the Connecticut Supreme Court for authority?"[7] The trial court responded, "[n]o, you may not," and overruled counsel's objection to the admission of exhibit 13, stating that it was "unable to [perceive] a settlement demand in exhibit 13 and [that] the document is nonhearsay, not offered for the truth of the statements asserted therein." After exhibit 13 was

---

[7] See C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988).

Kovachich *v.* Dept. of Mental Health & Addiction Services

admitted into evidence, the plaintiff's counsel asked whether ''any meeting [was] held with representatives of the [parties] in order to find a solution in the month of May, 2013, after we sent this email,'' and the plaintiff responded ''[n]o.''

Although there was no actual meeting, the defendant introduced into evidence a May 3, 2013 email from Lacedonia to the plaintiff's counsel (exhibit OOOOO), which was Lacedonia's reply to the email from the plaintiff's counsel that had been introduced into evidence as exhibit 13. The plaintiff's counsel stated that he had no objection, and the court admitted exhibit OOOOO in full. Exhibit OOOOO provides: ''Thanks for these materials. They seem to support the position that requests for voluntary compliance in limiting scents in the workplace (which [the plaintiff] has done extensively) is a reasonable accommodation, while mandatory [scent-free] policies are not. I left you a voicemail message around noon today. I look forward to hearing from you [concerning] what [the plaintiff] is seeking in resolution of this matter and am hopeful that you have a creative solution that will be workable for all parties.''

The plaintiff's counsel also offered into evidence exhibit 14, which was a May 30, 2013 email that he had sent to Lacedonia. Attached to this e-mail were a number of April, 2013 emails regarding recent instances of scent exposures. In the May 30 email, the plaintiff's counsel stated that one of the plaintiff's coworkers ''is also affected by scents in mandatory training situations'' and suggested that online training ''is a possible accommodation.'' The email further stated that the plaintiff ''is not going to accept a solution that has her apply for disability retirement as you suggested. We thin[k] that [that] is the wrong approach to [a] disability that can be accommodated. We are going to move forward with this case. We would like that to be in context of the [defendant's] changing its approach—to formally

adopt a policy that is endorsed by the highest levels of management, to educate, and to empower supervisors to take action when employees intentionally disrespect the right to breathe despite emails asking for awareness. Let me know what solutions your side proposes.'' The plaintiff testified that the purpose of the email was ''to have an interactive discussion and problem-solving session as to what was going on'' and ''the accommodations and things we were looking for.'' The defendant's counsel objected to the admission of exhibit 14 on the ground that it pertains ''to settlement discussions [before] the [commission] and, therefore, should not be admitted . . . .'' The trial court overruled the objection.

The plaintiff's counsel also sought to introduce into evidence a July 22, 2013 letter that he wrote to Daniel Salerno, an investigator with the commission, and copied to the plaintiff and Lacedonia (exhibit 12). Exhibit 12 begins by stating: ''I am writing at your request to clarify the demands of [the plaintiff] with respect to her claim of disability discrimination.'' The letter contains the following demands: (1) ''[The defendant] will adopt a policy of scent restriction following consultation with the union, and its membership will adopt a [scent-free] policy modeled on the attached Human Resources Administrative Rule implemented by the [c]ity of Portland, Oregon. The policy will apply to all . . . buildings [controlled by the defendant]. The policy will request that employees refrain from the use of strongly scented products. Supervisors will be permitted to enforce the policy when it becomes apparent that the use of a scent is interfering with a [coworker's] ability to breathe, and by extension, his or her ability to do the job. Discipline will not be imposed for unknowing violation of the [scent-free] restriction; only when the employee knowingly refuses to accommodate a [coworker's] disability, thereby placing the [coworker] at

Kovachich *v.* Dept. of Mental Health & Addiction Services

risk of potential adverse health consequences, will pro-
gressive discipline be imposed at the discretion of man-
agement. The collective bargaining agreement . . .
provides support for this policy: 'The employer shall
maintain safe and healthy working conditions. The
employer agrees to take reasonable measures to pro-
vide a work environment which minimizes the risk of
injury to employees.' Work rule [no.] 13 also provides
support for the imposition of discipline when an
employee knowingly refuses to modify behavior that
may cause harm to another employee and prevent that
employee from doing the job—'An employee shall not
interfere with the productivity of other employees or
cause any interruption of work.' " (2) "[The defendant]
will educate the [workforce], train supervisors, and post
notices in buildings and offices that it controls in order
to implement the policy and inform employees and the
public of the [scent-free] policy." (3) "[The defendant]
will offer [scent-free] classes for mandatory training or
provide mandatory training [online]." (4) "To the extent
that [the defendant] has not done so, it will provide a
working air filtration system with a HEPA filter to filter
the entire unit where [the plaintiff] is assigned." (5)
"[The plaintiff] will be allowed to leave the immediate
area when a violation of the [scent-free] restriction
occurs that may cause her to sustain adverse health
consequences, and a safe room will be made available
to [the plaintiff] to use for the duration of her shift until
the scent restricting her ability to work is removed
from the air she is breathing. Additionally, the person
violating the [scent-free] restriction will be asked to
leave the area and [to] remove the scent before accessing
the area again." (6) "[The plaintiff] will not be penalized
on the overtime list if she is unable to accept an over-
time opportunity because the location is likely to cause
her to be exposed to scents harmful to her health. Her
place on the overtime list will be preserved, and she

Kovachich *v.* Dept. of Mental Health & Addiction Services

will be offered the next overtime opportunity that she is able to take." (7) "All of [the plaintiff's sixty-seven] hours of sick time will be restored or she will be paid the monetary equivalent which we calculate as \$2106." (8) "[The defendant] will reimburse and pay [the plaintiff's attorney's] fees, which are \$16,773 to date." The letter closed: "We would be happy to meet with representatives of the [defendant] who have authority to discuss and recommend these requests."

The plaintiff testified that the letter was intended "to seek a meeting so that [she] could present what [she] thought would be a reasonable accommodation, to spark a discussion," and "to find a solution to this problem that [they] were having." Despite this request, the plaintiff testified that "the representatives of [the defendant] with authority to make the changes" did not meet with the plaintiff or her counsel.

The plaintiff's counsel offered exhibit 12 "not for the truth of the matter asserted but for the fact that this proposal was presented." The defendant's counsel objected, arguing that exhibit 12 was "a settlement discussion . . . barred by [General Statutes §] 46a-83."[8] When the trial court asked the defendant's counsel to repeat the statutory citation, she stated that she was "withdrawing that statutory claim." Instead, the defendant's counsel argued that "[i]t is part of the [commission's] mediation process and, therefore, should not be admissible" pursuant to "[t]he general rule . . . that settlement negotiations are not admissible based [on] the public policy of promoting the settlement of disputes." The trial court

_____

[8] The defendant objected to the admission of exhibit 12 in its entirety and did not ask the trial court to exercise its discretion to redact any portion of the exhibit. Cf. *State* v. *Roy D. L.*, 339 Conn. 820, 829–30 n.7, 262 A.3d 712 (2021) (emphasizing, with respect to evidentiary admission of forensic interviews, that trial court is not required to take "[an] 'all or nothing' approach" and "may exercise its discretion to redact portions of a forensic interview").

Kovachich *v.* Dept. of Mental Health & Addiction Services

overruled the objection on the ground that exhibit 12 was "highly relevant to the [defendant's] ability to react intelligently and legally to requests for accommodation. They are inseparable in [the court's] mind between what might be a technical request for settlement, which [the court] doubt[s], and a perfectly admissible request for accommodation for an acknowledged disability by the defendant. Therefore, the objection is overruled."[9]

At the conclusion of the bench trial, the trial court determined that the plaintiff had "proved her alleged violations of CFEPA . . . ." The court found that the defendant failed to effectuate the reasonable accommodations granted to the plaintiff by the defendant's ADA review committee due to the defendant's "abject failure to make any reasonable effort to educate the staff about what a scent-free environment is in spite of near continuing or continual urging from [the] plaintiff's union delegates to educate the workforce. To have done so . . . would have enormously reduced the frequent disregarding of the rules . . . concerning [a] scent-free workplace environment."

The court further found that the plaintiff had been "constructively discharged" from her employment and that there had been "a witch hunt to uncover unfavorable information on the plaintiff, involving both Girard and Reilly. . . . Wilson unconscionably delayed a decision on [the] plaintiff's second request for accommodation. Those actions spurred on the other tormentors,

_____

[9] The trial court subsequently cited § 4-8 of the Connecticut Code of Evidence, stating: "As long as we seem to be stopped for the moment, § 4-8 of the . . . Code of Evidence, titled 'Offers To Compromise,' [provides that] evidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim. It does not require the exclusion of evidence offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay, or proving an effort to obstruct. Statements of fact or admissions of liability made by a party are also excluded from the applicability of the rule. So that's—it's [§] 4-8 of the code. No need to cite to Tait and LaPlante . . . ."

Kovachich *v.* Dept. of Mental Health & Addiction Services

who made [the] plaintiff's life a living hell,'' and ''had a devastating impact on the plaintiff's ability to continue to put up with an untenable situation.'' With respect to ''the good faith interactive process required . . . after the filing of the complaint with the [commission],'' the trial court found that the interactive process ''did not continue after the plaintiff's attorney's letter to . . . Lacedonia. The court infers that from no evidence of any response whatsoever.''

The trial court awarded the plaintiff damages in the amount of ''$3800 of additional pension income, finding it more probable than not [that] the plaintiff would have worked for two more years but for the wrongful actions of the defendant.'' Additionally, the court awarded the plaintiff $125,000 ''[f]or the emotional distress caused by the actions of the defendant'' and $415,389.50 in attorney's fees. Accordingly, the court rendered judgment in favor of the plaintiff.

The defendant appealed to the Appellate Court, claiming that ''the [trial] court improperly (1) admitted into evidence settlement communications between the parties, (2) found that the defendant violated [CFEPA] . . . by providing insufficient accommodations to the plaintiff and failing to engage in the interactive process required under [CFEPA], (3) precluded the defendant from cross-examining the plaintiff with deposition testimony that was changed through an errata sheet, and (4) determined that hearsay statements by any state employee, including statements from the plaintiff's union representatives, were admissible against the defendant as admissions by a party opponent.'' *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 334. It also claimed that the trial court improperly awarded attorney's fees in the amount of $415,389.50. See id., 334 n.1. The Appellate Court agreed ''with the defendant's first, third, and fourth claims'' and, therefore, reversed the judgment of the

Kovachich *v.* Dept. of Mental Health & Addiction Services

trial court and the award of attorney's fees without reaching the defendant's second claim.[10] Id.

With respect to the defendant's first claim, the Appellate Court held that exhibits 12, 13, and 14 improperly were admitted into evidence under § 4-8 of the Connecticut Code of Evidence because they constituted settlement communications. See id., 349. The Appellate Court also held that the evidentiary error had caused substantial prejudice to the defendant because "the [trial] court impermissibly considered the plaintiff's settlement communications on the issue of liability" by "grounding its finding that the defendant had failed to engage in the interactive process on the inadmissible settlement communications." Id., 350. In arriving at its conclusion, the Appellate Court rejected the plaintiff's reliance on federal case law holding that evidence offered for the purpose of showing that the parties engaged in the good faith interactive process is admissible "for another purpose" under the exception to the general rule that settlement communications are inadmissible; see Conn. Code Evid. § 4-8 (b) (1); see also Fed. R. Evid. § 408 (b); reasoning that "the present case concerns settlement communications that occurred within the context of the commission's mandatory mediation program. The general rule that evidence of attempted settlements is not admissible against either party to the settlement negotiations is consistent with the statutory protections afforded conciliation efforts before the commission." *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 352, citing General Statutes §§ 46a-84 (e) and 46a-83 (j).

Although the defendant's first claim was dispositive of the appeal, the Appellate Court also addressed the

---

[10] The plaintiff filed a cross appeal, the merits of which the Appellate Court also declined to reach in light of its "reversal of the judgment of the trial court and remand for a new trial . . . ." *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 334 n.3.

Kovachich *v.* Dept. of Mental Health & Addiction Services

merits of the defendant's third and fourth claims on the
ground that those issues likely would arise in a new trial
on remand. See *Kovachich* v. *Dept. of Mental Health &
Addiction Services*, supra, 199 Conn. App. 353, 362.
The Appellate Court determined that those claims were
meritorious, as well, concluding that (1) under Practice
Book § 13-30 (d), "original deposition responses are
admissible notwithstanding amended answers on an
errata sheet," and, therefore, the trial court improperly
precluded the defendant's counsel from cross-examin-
ing the plaintiff on her original deposition responses;
id., 361–62; and (2) the trial court improperly admitted
into evidence statements made by state employees,
union delegates, and management without conducting
the requisite analysis under § 8-3 (1) (D) of the Connect-
icut Code of Evidence "to determine whether the state-
ment[s] related to a matter within the scope of the
declarant's employment." Id., 366. Because a new trial
was required, the Appellate Court did not address
whether these evidentiary errors were harmful. See id.,
353 n.13.

We granted the plaintiff's petition for certification to
appeal, limited to the following three issues: (1) "Did
the Appellate Court correctly conclude that the trial
court had erroneously admitted into evidence written
communications between counsel, and between the
plaintiff's counsel and an investigator of the [commis-
sion], under § 4-8 of the Connecticut Code of Evidence,
which provides that offers to compromise or to settle
a disputed claim are inadmissible?" (2) "If the answer
to the first question is 'yes,' did the Appellate Court
correctly conclude that the admission of that evidence
caused substantial prejudice requiring reversal of the
trial court's judgment?" And (3) "If the answer to either
the first or the second question is 'no,' did any of the
other evidentiary errors identified by the Appellate
Court result in harmful error in the trial court?" *Kovach-*

*ich* v. *Dept. of Mental Health & Addiction Services*, supra, 335 Conn. 958–59.

I

We first address whether exhibits 12, 13, and 14 properly were admitted into evidence under § 4-8 of the Connecticut Code of Evidence. The plaintiff claims that these exhibits were admissible because they were not offers to compromise or settle a disputed claim but, rather, provided "evidence of the plaintiff's engagement in the interactive, good faith process" required by CFEPA. Alternatively, if any of the exhibits constitute an offer to compromise or settle a claim, the plaintiff contends that the trial court nonetheless properly admitted each of the exhibits pursuant to § 4-8 (b) (1), which allows for the admission of offers of compromise "for another purpose . . . ." We agree with the plaintiff that exhibits 12, 13, and 14 properly were admitted "for another purpose" under § 4-8 (b) (1), namely, as evidence of the parties' engagement in, or failure to engage in, the good faith interactive process required by CFEPA.

Section 4-8 (a) of the Connecticut Code of Evidence provides that "[e]vidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim." According to the commentary, "[t]he purpose of the rule is twofold. First, an offer to compromise or settle is of slight probative value on the issues of liability or the amount of the claim since a party, by attempting to settle, merely may be buying peace instead of conceding the merits of the disputed claim. . . . Second, the rule supports the policy of encouraging parties to pursue settlement negotiations by assuring parties that evidence of settlement offers will not be introduced into evidence to prove liability or a lack thereof if a trial ultimately ensues." (Citation omitted.) Conn. Code Evid. § 4-8, commen-

Kovachich *v.* Dept. of Mental Health & Addiction Services

tary; see *Tomasso Bros.*, *Inc.* v. *October Twenty-Four*, *Inc.*, 221 Conn. 194, 198, 602 A.2d 1011 (1992) ("[t]he general rule that evidence of settlement negotiations is not admissible at trial is based [on] the public policy of promoting the settlement of disputes" (internal quotation marks omitted)).

Under subdivision (1) of § 4-8 (b) of the Connecticut Code of Evidence, however, evidence of an offer to compromise or settle a disputed claim is admissible if it "is offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution . . . ." The "list of purposes for which such evidence may be introduced is intended to be illustrative rather than exhaustive"; Conn. Code Evid. § 4-8, commentary; and, therefore, "other reasons will also suffice as long as they are relevant to some issue other than liability or damages." E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 4.19.4, p. 203; see, e.g., *State* v. *Milum*, 197 Conn. 602, 613, 500 A.2d 555 (1985) (evidence of offer of compromise between defendant and state's principal witness in related civil action was admissible in part because it "clearly goes to the issue of the [witness'] claimed bias and interest"); *Lynch* v. *Granby Holdings, Inc.*, 32 Conn. App. 574, 584, 630 A.2d 609 (1993) (evidence of settlement negotiations properly was admitted "for the purpose of explaining the fact that the parties took steps to correct the . . . problems, and that this evidence was not to be construed as an admission of liability"), rev'd on other grounds, 230 Conn. 95, 644 A.2d 325 (1994).

Whether exhibits 12, 13, and 14 constitute settlement communications that are relevant and material to a disputed issue other than the defendant's liability or the value of the plaintiff's claims is an evidentiary issue

Kovachich *v.* Dept. of Mental Health & Addiction Services

"reviewed for an abuse of discretion."[11] *Monti* v. *Wenkert*, 287 Conn. 101, 126, 947 A.2d 261 (2008); see, e.g., *State* v. *Ankerman*, 81 Conn. App. 503, 514, 840 A.2d 1182, cert. denied, 270 Conn. 901, 853 A.2d 520, cert. denied, 543 U.S. 944, 125 S. Ct. 372, 160 L. Ed. 2d 256 (2004); *Bugryn* v. *Bristol*, 63 Conn. App. 98, 111, 774 A.2d 1042, cert. denied, 256 Conn. 927, 776 A.2d 1143, cert. denied, 534 U.S. 1019, 122 S. Ct. 544, 151 L. Ed. 2d 422 (2001). "It is axiomatic that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. . . . In this regard, the trial court is vested with wide discretion in determining the admissibility of evidence . . . . Accordingly, [t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Furthermore, [i]n determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Popeleski*, 291 Conn. 769, 774, 970 A.2d 108 (2009).

---

[11] The defendant claims that "the standard of review should be plenary" because "the admission of the 2013 settlement communications violated [§ 4-8 (a) of the] Connecticut Code of Evidence . . . [General Statutes] § 52-235d, as well as . . . § 46a-84 (e)." We disagree. The trial court's admission of exhibits 12, 13, and 14 was not predicated on its legal interpretation of the language of § 4-8 of the Code of Evidence but, instead, on its assessment of the nature and purpose of the proffered exhibits, which is the type of inquiry that "require[s] [the] trial court to make [a] judgment call involving determinations about which reasonable minds may . . . differ . . . ." (Internal quotation marks omitted.) *State* v. *Best*, 337 Conn. 312, 323, 253 A.3d 458 (2020); see *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007) ("To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citations omitted.)). To the extent that the defendant claims that the admission of exhibits 12, 13, and 14 violated §§ 52-235d and 46a-84 (e), we decline to address this claim because it was not preserved in the trial court and is outside the scope of the questions certified for our review.

We need not decide whether the communications contained in exhibits 12, 13, and 14 constituted offers to settle or compromise the plaintiff's claims because, even if they were settlement offers, we conclude that the trial court did not abuse its discretion in admitting the exhibits "for another purpose" under § 4-8 (b) (1) of the Connecticut Code of Evidence. To understand the purpose for which the exhibits were admitted, we review the case law governing employment discrimination claims under CFEPA. A plaintiff seeking to establish employment discrimination in violation of § 46a-60 (b) (1) on the basis of an employer's failure to provide a reasonable accommodation for an employee's disability "must produce enough evidence for a reasonable jury to find that (1) he is disabled within the meaning of the [statute], (2) he was able to perform the essential functions of the job with or without a reasonable accommodation, and (3) [the defendant], despite knowing of [the plaintiff's] disability, did not reasonably accommodate it. . . . If the employee has made such a prima facie showing, the burden shifts to the employer to show that such an accommodation would impose an undue hardship on its business." (Citations omitted; internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 415–16, 944 A.2d 925 (2008).

In *Curry*, we relied on federal precedent and employment discrimination regulations to hold that, under CFEPA, "the employer and the employee [must] engage in an informal, interactive process with the qualified individual with a disability in need of the accommodation . . . [to] identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." (Internal quotation marks omitted.) Id., 416. "The need for bilateral discussion arises because each party holds information the other does not have or cannot easily

Kovachich *v.* Dept. of Mental Health & Addiction Services

obtain.'' (Internal quotation marks omitted.) *Festa* v. *Board of Education*, 145 Conn. App. 103, 115, 73 A.3d 904, cert. denied, 310 Conn. 934, 79 A.3d 888 (2013). The employee bears the burden of initiating the interactive process and ''must come forward with some suggestion of accommodation, and the employer must make a good faith effort to participate in that discussion.'' *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 416. A plaintiff who fails to initiate or to participate in the interactive process in good faith cannot prevail on an employment discrimination claim under CFEPA. See *Festa* v. *Board of Education*, supra, 116 (plaintiff was unable to prevail on her CFEPA claims because she ''was responsible for obstructing the interactive process between the parties''). Once the employee has initiated the informal interactive process, the employer has a ''duty of good faith compliance.'' *Curry* v. *Allan S. Goodman, Inc.*, supra, 418. An employer's ''refusal to give [an employee his or her] specific requested accommodation does not necessarily amount to bad faith, so long as the employer makes an earnest attempt to discuss other potential reasonable accommodations.'' *Equal Employment Opportunity Commission* v. *Kohl's Dept. Stores, Inc.*, 774 F.3d 127, 133 (1st Cir. 2014); see *Taylor* v. *Phoenixville School District*, 184 F.3d 296, 317 (3d Cir. 1999) (''The interactive process does not dictate that any particular concession . . . be made by the employer . . . . All the interactive process requires is that employers make a [good faith] effort to seek accommodations.'' (Citation omitted.)). Additionally, an employer's failure to participate in the interactive process in good faith ''does not give rise to per se liability'' but ''may be sufficient grounds for denying a defendant's motion for summary judgment, because it is, at least, some evidence of discrimination.'' (Internal quotation marks omitted.) *Curry* v. *Allan S. Goodman, Inc.*, supra, 418; see *Sheng* v. *M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017) (''a

Kovachich *v.* Dept. of Mental Health & Addiction Services

failure to engage in a good faith interactive process is not an independent violation of the ADA'' but ''can be introduced as evidence tending to show disability discrimination'').

The interactive process required by law is ongoing, meaning that the provision of a ''temporary accommodation does not circumvent . . . the requirement to make a good faith effort to engage in [the] interactive process, if the employee so requests, to determine whether the employer might make some other reasonable accommodation on a more permanent basis.'' *Curry* v. *Allan S. Goodman, Inc.*, supra, 286 Conn. 416–17; see *Humphrey* v. *Memorial Hospitals Assn.*, 239 F.3d 1128, 1138 (9th Cir. 2001) (''[T]he duty to accommodate [under the ADA] is a continuing duty that is not exhausted by one effort. . . . [A]n employer must consider each request for reasonable accommodation, and . . . [i]f a reasonable accommodation turns out to be ineffective and the employee with a disability remains unable to perform an essential function, the employer must consider whether there would be an alternative reasonable accommodation that would not pose an undue hardship.'' (Citation omitted; internal quotation marks omitted.)), cert. denied, 535 U.S. 1011, 122 S. Ct. 1592, 152 L. Ed. 2d 509 (2002). The continuing obligation to engage in the interactive process in good faith fosters a cooperative dialogue between the employer and the employee and furthers their shared responsibility to fashion a reasonable accommodation. See *Festa* v. *Board of Education*, supra, 145 Conn. App. 115 (''the responsibility for fashioning a reasonable accommodation is shared between the employee and the employer'' (internal quotation marks omitted)); cf. *Kleiber* v. *Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (''the [ADA's] interactive process is mandatory, and both parties have a duty to participate in good faith''). If either party ''obstructs or delays the

Kovachich *v.* Dept. of Mental Health & Addiction Services

interactive process" in bad faith by, for example, failing "to communicate, by way of initiation or response," that party will be "assign[ed] responsibility" for the breakdown of the interactive process. (Internal quotation marks omitted.) *Festa* v. *Board of Education*, supra, 115–16.

As the defendant acknowledges, the ongoing interactive process continues during the course of the plaintiff's employment, even after the plaintiff has filed a complaint alleging disability discrimination. Given the potential overlap between pending or impending litigation and the duty to engage in a good faith interactive process to find a reasonable accommodation for the plaintiff's disability, it may be very difficult in some circumstances to distinguish between settlement negotiations and the interactive process. When the good faith interactive process bleeds into the settlement process, the question presented in the instant case arises: are reasonable accommodations proffered during the course of settlement communications admissible under § 4-8 (b) (1) of the Connecticut Code of Evidence for the purpose of demonstrating a party's compliance or noncompliance with the applicable legal requirements regarding the initiation of or participation in the good faith interactive process?

Federal case law construing rule 408 of the Federal Rules of Evidence[12] is instructive in this context. As the Appellate Court aptly observed in the present case, the federal courts " 'have admitted evidence of compromise offers and negotiations for the purpose of showing that

_____

[12] Similar to § 4-8 of the Connecticut Code of Evidence, under the Federal Rules of Evidence, settlement communications are inadmissible "to prove or disprove the validity or amount of a disputed claim"; Fed. R. Evid. 408 (a); except "[t]he court may admit this evidence for another purpose, such as proving a [witness'] bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408 (b).

Kovachich *v.* Dept. of Mental Health & Addiction Services

the parties engaged in the interactive process . . . .' In *Griesinger* v. *University of Cincinnati*, United States District Court, Docket No. 1:13-cv-808 (KLL) (S.D. Ohio March 25, 2016), the United States District Court for the Southern District of Ohio concluded that offers of accommodations made by counsel for the defendant to the plaintiff's counsel with respect to a skills assessment needed prior to completing a practicum, including, inter alia, advance notice of the skills to be tested, individual instructions, and an opportunity to watch other students' skills tests, could be admissible for the purpose of showing that the university engaged in the interactive process to reach a reasonable accommodation. In a previous decision from the United States District Court for the Southern District of Ohio, *Linebarger* v. *Honda of America Mfg.*, *Inc.*, 870 F. Supp. 2d 513, 521 n.2 (S.D. Ohio 2012), the court found that interactions between counsel regarding accommodations offered to an employee in the form of two additional unscheduled break periods were not barred by rule 408 of the Federal Rules of Evidence [when] the communications were made in an effort to reach a consensus on a reasonable accommodation. In *Cook* v. *Morgan Stanley Smith Barney*, United States District Court, Docket No. H-13-1321 (GHM) (S.D. Tex. August 15, 2014), the United States District Court for the Southern District of Texas denied a motion to strike the affidavit of the defendant's counsel, which stated that 'during the interactive process to see if there was any accommodation that could be made to facilitate [the plaintiff's] return to work . . . [the plaintiff's counsel] advised that his client would not be returning to work at [the defendant] and would move forward with filing a claim against [the defendant].' . . . The court stated that the evidence contained in the affidavit was used to support the defendant's argument that the plaintiff had refused to return to work without a change in supervisor. Id. The court concluded that

Kovachich *v.* Dept. of Mental Health & Addiction Services

the evidence was being used 'not to show liability but to show that [the defendant] was engaging in the interactive process.' Id. In *Williams* v. *British Airways, PLC*, United States District Court, Docket Nos. 04-CV-0471, 06-CV-5085 (CPS) (SMG) (E.D.N.Y. September 27, 2007), the United States District Court for the Eastern District of New York stated that 'settlement discussions may be considered in the ADA context for the purpose of assessing a party's participation in the interactive process.' The court considered statements contained in an affidavit detailing settlement discussions that occurred during a conference with a magistrate. Id." *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 350–52.[13]

We find these cases to be persuasive and hold that a party's offer to settle or compromise a claim may, under the appropriate circumstances, be admissible under subdivision (1) of § 4-8 (b) of the Connecticut Code of Evidence for the purpose of establishing a party's initiation of or participation in the good faith interactive process required by CFEPA, or the failure to communicate with the opposing party by way of initiation or response.[14]

---

[13] See *Scavetta* v. *King Soopers, Inc.*, Docket No. 10-cv-02986-WJM-KLM, 2013 WL 2393070, *2–3 (D. Colo. May 31, 2013) (granting motion in limine to exclude settlement agreement as more prejudicial than probative but noting that defendant's "proposed purposes for admitting the [s]ettlement [a]greement—the break in causation of damages, and [the defendant's] efforts to accommodate [the] [p]laintiff—are not inadmissible under [r]ule 408 [of the Federal Rules of Evidence]"). But see *Jackson* v. *O'Reilly Automotive Stores, Inc.*, 131 F. Supp. 3d 756, 762–63 (M.D. Tenn. 2015) (evidence of defendant's settlement offer was inadmissible under rule 408 of Federal Rules of Evidence for purpose of "demonstrat[ing] both that [the] [d]efendant failed to properly engage in the interactive process and that it could have reasonably accommodated him").

[14] The defendant contends that these cases are inconsistent with *Sheng* v. *M&TBank Corp.*, supra, 848 F.3d 78, which the defendant argues established "unequivocally . . . that settlement discussions are not admissible to satisfy the requisite informal interactive process." *Sheng* says nothing of the kind. In *Sheng*, the Second Circuit held that the defendant employer's offer of reinstatement of employment was inadmissible under rule 408 of the Federal

Kovachich *v.* Dept. of Mental Health & Addiction Services

The Appellate Court determined that the foregoing federal case law was distinguishable because "the present case concerns settlement communications that occurred within the context of the commission's mandatory mediation program" and "[t]he general rule that evidence of attempted settlements is not admissible against either party to the settlement negotiations is consistent with the statutory protections afforded con-

---

Rules of Evidence to prove the plaintiff employee's failure to mitigate damages. See id., 83. The Second Circuit noted that, during the settlement negotiations in which the offer of reinstatement had been made, the parties "agreed . . . that [r]ule 408 . . . [which] provid[es] that offers of settlement are inadmissible in later proceedings under certain conditions . . . would govern the conversation." Id. There was no factual dispute that "the reinstatement offer was conditioned [on] dropping the lawsuit and its monetary demand"; id., 85; and, under those circumstances, the Second Circuit concluded that it was a conditional offer of settlement "subject to exclusion under [r]ule 408." Id. The court proceeded to hold that, although an employer's "failure to engage in an interactive process is alone [in]sufficient to support a [failure to accommodate] claim under the ADA . . . district courts may admit an employer's failure to engage in an interactive process as evidence of discrimination under the ADA." Id., 86. The court then stated that it saw "no conflict between this proposition and [its] ruling with regard to the exclusion of [the defendant employer's] offer [of reemployment] under [r]ule 408 . . . . *An offer of an accommodation conditioned* [*on*] *the dropping of monetary claims does not fulfill the requirements of the ADA as to an interactive process.* The [ADA] clearly imposes a duty to provide an accommodation in job requirements, if feasible. The discussion obligation relates only to the feasibility of accommodating employer/employee needs. Conditioning proposed accommodations on the dropping of claims does not fulfill that obligation." (Emphasis added.) Id., 87.

*Sheng* is distinguishable from the present case because, unlike the defendant employer in *Sheng*, the plaintiff in the present case did not condition the reasonable accommodations proposed in exhibits 12, 13, and 14 on "the dropping of [any] monetary claims . . . ." Id. Indeed, the plaintiff did not seek monetary damages in exchange for the proposed reasonable accommodations at all. Although the plaintiff did seek restoration of sick pay and reimbursement of attorney's fees for the defendant's past failure to accommodate her disability, there is no indication in the challenged communications that the accommodations proposed therein were contingent on fulfilling those demands or that the defendant understood it to have that meaning. Instead, exhibits 12, 13, and 14 "relate[d] only to the feasibility of accommodating [the plaintiff's employment] needs." Id. For this reason, the defendant's reliance on *Sheng* is misplaced.

Kovachich *v.* Dept. of Mental Health & Addiction Services

ciliation efforts before the commission'' under §§ 46a-84 (e) and 46a-83 (j).[15] Id., 352. We disagree because there is nothing in the record to establish that the communications contained in exhibits 12, 13, and 14 occurred within the context of the commission's mandatory mediation program.[16] To the contrary, the plaintiff's

[15] General Statutes § 46a-84 (e) provides that ''[a] human rights referee or attorney who volunteers service pursuant to subdivision (18) of section 46a-54 may supervise settlement endeavors. In employment discrimination cases only, the complainant and respondent, with the permission of the chief referee, may engage in alternate dispute resolution endeavors for not more than three months. The cost of such alternate dispute resolution endeavors shall be borne by the complainant or the respondent, or both, and not by the commission. Any endeavors or negotiations for conciliation, settlement or alternate dispute resolution shall not be received in evidence.''

General Statutes § 46a-83 (j) provides that ''[n]o commissioner or employee of the commission may disclose, except to the parties or their representatives, what has occurred in the course of the commission's processing of a complaint, provided the commission may publish the facts in the case and any complaint that has been dismissed and the terms of conciliation when a complaint has been adjusted. Each party and his or her representative shall have the right to inspect and copy documents, statements of witnesses and other evidence pertaining to the complaint, except as otherwise provided by federal law or the general statutes.''

Pursuant to these statutes, ''[commission] investigators are prohibited from disclosing what has occurred during conciliation efforts, unless the complaint has been satisfactorily adjusted. . . . More importantly, hearing officers appointed by the [commission] are prohibited from receiving in evidence [a]ny endeavors or negotiations for conciliation.'' (Citations omitted; footnote omitted; internal quotation marks omitted.) *Miko* v. *Commission on Human Rights & Opportunities*, 220 Conn. 192, 209–10, 596 A.2d 396 (1991); see *Green* v. *Freedom of Information Commission*, 178 Conn. 700, 703, 425 A.2d 122 (1979) (''[CFEPA] relies heavily on conciliation as a means of eliminating discriminatory employment practices. To further this process, the act bars absolutely the disclosure of conciliation endeavors and postpones disclosure of complaints until they have been dismissed or adjusted. The obvious purpose of providing confidentiality is to encourage compromise, [whereas] premature disclosure might force the parties into public postures, which would inhibit or prevent settlements.'').

[16] As we previously explained, the applicability of the statutory protections provided by §§ 46a-84 (e) and 46a-83 (j) was neither raised in the trial court nor certified for our review. See footnote 11 of this opinion. Additionally, the parties have not undertaken an analysis of these statutory provisions in their appellate briefs, although the defendant argues in a conclusory fashion that §§ 46a-84 (e) and 46a-83 (j) preclude the admission of commis-

Kovachich *v.* Dept. of Mental Health & Addiction Services

complaint had been pending with the commission for approximately one year and had been referred to a commission investigator at the time the documents were generated, which, according to the commission, indicates "that mandatory mediation had at least initially concluded . . . ."[17] The evidence is insufficient to support a reasonable inference that exhibits 12, 13, and 14 were generated during the commission's mandatory mediation program. Although the communications

---

sion mediation documents in court, whereas the commission argues that these statutes are inapplicable to judicial proceedings. Nonetheless, the commission maintains that "[t]he confidentiality of [commission] mediations is crucial" and, therefore, that we should recognize a presumption against the evidentiary admission of communications generated during the commission's mediation efforts. This presumption, the commission argues, should not extend to *all* communications before the commission because such a rule "would disincentivize the filing of a [commission] complaint by any employee who may need to initiate or continue the interactive process afterward, chill requests for accommodation by any employee with a pending [commission] complaint, and grant employers impunity for failing to uphold their obligations while a complaint is pending." Because the applicability of §§ 46a-84 (e) and 46a-83 (j) is not preserved, certified, or adequately briefed for our review, we decline to address this issue.

[17] As the commission points out in its amicus brief, "[m]andatory mediation is one of the earliest steps in the [commission] process, generally taking place within sixty days of a complaint being retained by the [commission] after its initial threshold review. . . . At any time after an unsuccessful mediation, however, the parties or [the commission] may request that the complaint proceed to 'early legal intervention,' in which a [commission] attorney reviews the case and determines the appropriate next step." (Citations omitted; footnotes omitted.) See General Statutes § 46a-83 (d) through (f). Additionally, the parties' failure to meet to discuss the plaintiff's proffered accommodations reinforces the inference that these communications were not part of the mandatory mediation program. Attendance at a mandatory mediation conference is mandatory, and failure to attend may result in "an order of default against a respondent"; General Statutes § 46a-83 (*l*); or "an order of dismissal against a complainant . . . ." General Statutes § 46a-83 (m). The undisputed evidence in the record reflects that, despite the repeated requests of the plaintiff's counsel for a meeting, the parties did not meet to discuss the accommodations proposed in exhibits 12, 13, and 14. Because the record is inadequate to establish that these communications occurred during the commission's mandatory mediation program, we need not decide whether the public policy in favor of the commission's conciliation efforts rendered them inadmissible on that basis. See footnote 16 of this opinion.

Kovachich *v.* Dept. of Mental Health & Addiction Services

contained in these exhibits occurred while the plaintiff's complaint was pending before the commission, there is no evidence to indicate that they were part of the commission's conciliation efforts, as opposed to the commission's investigative efforts, or independent of the commission's efforts altogether.[18] On the present evidentiary record, we cannot conclude that the public policy favoring the confidentiality of the commission's conciliation efforts required the exclusion of exhibits 12, 13, and 14 as a matter of law.

The defendant and the dissenting opinion contend that exhibits 12, 13, and 14 improperly were admitted for the purpose of demonstrating the defendant's liability, rather than "for another purpose" under § 4-8 (b) (1). Not so. As we previously explained, the purpose of the evidentiary admission was "not to show liability but to show that [a party] was engaging in the interactive process."[19] *Cook* v. *Morgan Stanley Smith Barney,*

[18] We recognize that exhibit 12 is a letter addressed to Salerno, an investigator at the commission, in response to Salerno's "request to clarify" the plaintiff's demands "with respect to her claim of disability discrimination." There is no evidence in the record, however, to suggest that Salerno was acting in his professional capacity as a mediator, rather than as an investigator assigned to "process the complaint by any lawful means . . . ." General Statutes § 46a-83 (f); see footnote 6 of this opinion.

[19] Evidence often is admitted for a limited purpose. Indeed, our rules of evidence provide that "[e]vidence that is admissible as to one party but not as to another, *or for one purpose but not for another*, is admissible as to that party *or for that purpose*. The court may, and upon request shall, restrict the evidence to its proper scope." (Emphasis added.) Conn. Code Evid. § 1-4; see *State* v. *Tryon*, 145 Conn. 304, 309, 142 A.2d 54 (1958) ("[when] evidence, although inadmissible for one purpose, is admissible and is offered for another and proper purpose, it should be admitted with a limitation to the proper purpose," and "[t]he fact that theoretically the evidence might be misused . . . is no ground for excluding it"). In the present case, the challenged evidence was offered and admitted for the limited purpose of demonstrating the plaintiff's efforts to communicate with the defendant to arrive at a reasonable accommodation for her disability in accordance with the requirements of CFEPA, and there is no evidence in the record to suggest that it was used by the trial court for an improper purpose, such as to establish the defendant's liability.

supra, United States District Court, Docket No. H-13-
1321 (GHM). Notably, the trial court did not rely on
these exhibits to find that the defendant engaged in
discrimination; that finding was predicated on the trial
court's determination that the defendant had "failed to
effectuate [the plaintiff's] accommodations . . . by
abject failure to make any reasonable effort to educate
the staff about what a scent-free environment [means]"
and Girard's "refus[al] to do anything whosoever about
the scent-free workplace environment provided by the
ADA [review] committee . . . ." Although the trial
court relied on the defendant's failure to respond to
exhibit 14 to find that "the good faith interactive pro-
cess" required by CFEPA had broken down; see foot-
note 20 of this opinion; that finding was based on the
defendant's failure to present any evidence that it
responded to the plaintiff's communication, rather than
the content of the communication itself. We therefore
reject the contention that the purpose for which the
challenged communications were proffered, admitted,
and relied on was improper.

Having determined that settlement communications
may, under the appropriate circumstances, be admitted
under § 4-8 (b) (1) of the Connecticut Code of Evidence
for the purpose of demonstrating a party's initiation of
or participation in the good faith interactive process
required by CFEPA, or the failure to communicate by
way of initiation or response, we next address whether
the trial court abused its discretion in admitting exhibits
12, 13, and 14 for those purposes. We perceive no error
in the trial court's determination that these exhibits
were "highly relevant to the [defendant's] ability to react
intelligently and legally to [the plaintiff's] requests for
accommodation." See, e.g., *State* v. *Best*, 337 Conn. 312,
317, 253 A.3d 458 (2020) ("Relevant evidence is evidence
that has a logical tendency to aid the trier in the determi-
nation of an issue. . . . Evidence is relevant if it tends

Kovachich *v.* Dept. of Mental Health & Addiction Services

to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence.'' (Internal quotation marks omitted.)); see also Conn. Code Evid. § 4-1 ('' '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence''). In exhibit 13, the plaintiff's counsel suggested a meeting with Lacedonia to discuss some of the outstanding issues regarding reasonable accommodations for the plaintiff's disability, such as air purifiers and the enforcement of the scent-free environment on the Brief Care Unit. Similarly, in exhibit 14, the plaintiff's counsel reiterated ''the need for a more formalized approach to [scent-free] environments'' in light of some employees' disregard of the scent-free designation. The plaintiff's counsel suggested online courses as ''a possible accommodation'' and asked the defendant to ''chang[e] its approach— to formally adopt a policy that is endorsed by the highest levels of management, to educate, and to empower supervisors to take action when employees intentionally disrespect the right to breathe despite emails asking for awareness.'' The plaintiff's counsel also wanted to ''know what solutions [the defendant's] side proposes.'' Lastly, exhibit 12, which ''clarif[ied] the demands of [the plaintiff] with respect to her claim of disability discrimination,'' contained a comprehensive list of proposed accommodations that would enable the plaintiff to continue her employment with the defendant and asked ''to meet with representatives of the [defendant] who have authority to discuss and recommend these requests.'' Given the content of these communications, we cannot conclude that the trial court abused its discretion in admitting exhibits 12, 13, and 14 for the purpose of establishing the plaintiff's participation in the good faith interactive process required by CFEPA and

Kovachich *v.* Dept. of Mental Health & Addiction Services

the defendant's failure to continue to participate in that process by way of response.[20] Accordingly, the Appellate Court improperly reversed the judgment of the trial court.

## II

We next address whether the judgment of the Appellate Court may be affirmed on the alternative ground that the other evidentiary errors committed by the trial court were harmful to the defendant.[21] It is well established that, "[b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . In other words, an evidentiary ruling will result in a new trial only if the ruling was both wrong and harmful. . . . Moreover, an evidentiary impropriety in

[20] To the extent the defendant claims that the trial court's factual finding regarding its failure to participate in good faith in the interactive process was clearly erroneous on the ground that the trial court ignored exhibit OOOOO, we reject this claim, as well. The trial court found that "the good faith interactive process required . . . after the filing of the complaint with the [commission] . . . did not continue after the plaintiff's attorney's letter to . . . Lacedonia" on the ground that there was "no evidence of any response whatsoever." The defendant contends that this factual finding was "clear error" because the defendant produced evidence of a response to exhibit 13, namely, exhibit OOOOO. The record reflects, however, that the plaintiff's counsel wrote two emails to Lacedonia: an April 29, 2013 email, which was admitted into evidence as exhibit 13, and a May 30, 2013 email, which was admitted into evidence as exhibit 14. There is no evidence in the record to suggest that the plaintiff ever received a response to exhibit 14, and, therefore, we cannot conclude that the trial court's factual finding was clearly erroneous. See generally *De La Concha of Hartford, Inc.* v. *Aetna Life Ins. Co.*, 269 Conn. 424, 432, 849 A.2d 382 (2004) (A trial court's factual "findings are binding [on] this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.)).

[21] Whether the Appellate Court correctly determined that the evidentiary errors occurred is not before us on appeal; the sole issue is harm.

Kovachich *v.* Dept. of Mental Health & Addiction Services

a civil case is harmless only if we have a fair assurance that it did not affect the [fact finder's] verdict. . . . A determination of harm requires us to evaluate the effect of the evidentiary impropriety in the context of the totality of the evidence adduced at trial." (Internal quotation marks omitted.) *Klein* v. *Norwalk Hospital*, 299 Conn. 241, 254–55, 9 A.3d 364 (2010); see *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, 308 Conn. 1, 20, 60 A.3d 222 (2013) ("[t]he standard in a civil case for determining whether an improper [evidentiary] ruling was harmful is whether the . . . ruling [likely] would [have] affect[ed] the result" (internal quotation marks omitted)). For the following reasons, we conclude that the evidentiary errors identified by the Appellate Court were harmless.[22]

A

The plaintiff claims that the improper exclusion of her prior inconsistent deposition testimony, which had been amended through an errata sheet, was harmless. The following additional procedural history, as set forth by the Appellate Court, is relevant to our resolution of this claim. "The plaintiff was deposed on April 7, 2017, and the defendant filed a motion for summary judgment on April 21, 2017. The plaintiff subsequently executed an errata sheet, in which she amended eleven deposition responses, three of which amendments are relevant

---

[22] The defendant contends that the trial court's evidentiary errors violated its "due process rights" and its right "to confront the witnesses against [it]." (Internal quotation marks omitted.) To the extent that the defendant claims for the first time on appeal that the trial court's evidentiary rulings rose to the level of a constitutional violation, we reject the defendant's claim. See, e.g., *State* v. *Elias V.*, 168 Conn. App. 321, 344, 147 A.3d 1102 ("[R]obing garden variety claims [of an evidentiary nature] in the majestic garb of constitutional claims does not make such claims constitutional in nature. . . . Putting a constitutional tag on a nonconstitutional claim will no more change its essential character than calling a bull a cow will change its gender." (Internal quotation marks omitted.)), cert. denied, 323 Conn. 938, 151 A.3d 386 (2016).

Kovachich *v.* Dept. of Mental Health & Addiction Services

for purposes of this appeal. The plaintiff changed her response that she had her hair permed every six to eight weeks between 2010 and 2014, to 'I did not have my hair permed between 2010 and 2014.'[23] Next, the plaintiff testified during her deposition that she had not discussed with SMHA officials transferring to a position that did not involve direct patient care. In her errata sheet, the plaintiff amended her response to state: 'I asked . . . Wilson on two occasions to find employment elsewhere.' Finally, the plaintiff testified during her deposition that she 'did not take any' steps to notify management that the accommodations were not working. In her errata sheet, she changed that response to state: 'I frequently [emailed] management notifying them of the continued scent exposures.' In her errata sheet, the plaintiff stated as the reason for each of the eleven changes that 'I was having difficulty concentrating on the task at hand due to the stress of losing my father, concern for my mother's health, who I had left in Florida to attend the deposition, and my own physical illness.' '' (Footnote in original.) *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 353–54.

On the basis of our review of the totality of the evidence, we conclude that the trial court's improper exclusion of the plaintiff's original deposition testimony did not affect the outcome of the trial. The defendant's counsel cross-examined the plaintiff extensively over the course of approximately three days. The defendant was permitted to inquire into the plaintiff's ability to live "a normal life" outside of work, the scents that

[23] "The plaintiff also indicated on the errata sheet 'see also page 173:7-8.' The testimony on that page relates to a February, 2013 incident in which a coworker came to work after having gone to a hair salon, and the plaintiff experienced a reaction. When asked whether she would have problems when she had gone to the hair salon on her own during that time, the plaintiff responded: 'I was not going to the hairdressers back then.' '' *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 353 n.14.

Kovachich *v.* Dept. of Mental Health & Addiction Services

triggered her rhinitis, asthma, and vocal cord dysfunction, the efficacy of the reasonable accommodations provided by the defendant, the communications exchanged between the plaintiff and the defendant as to the efficacy of these accommodations, and the plaintiff's job performance, including, but not limited to, her ability to provide direct patient care.

At trial, the defendant did not dispute that the plaintiff was disabled and entitled to reasonable accommodations. Instead, during closing argument, the defendant's counsel focused on the reasonableness and effectiveness of the accommodations provided by the defendant, arguing that the defendant had fulfilled its obligation under CFEPA to provide the plaintiff with reasonable accommodations for her disability, even if those accommodations were not the plaintiff's choice. See *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, supra, 308 Conn. 20 (in assessing harm, "our analysis includes a review of . . . the relationship of the [excluded] evidence to the central issues in the case, particularly as highlighted by the parties' summations" (internal quotation marks omitted)); see also *Festa* v. *Board of Education*, supra, 145 Conn. App. 116–17 ("[t]he plaintiff is not entitled to the accommodation of her choice; she is entitled to a reasonable accommodation"). Given the defendant's thorough cross-examination of the plaintiff regarding the extent of her disability and the efficacy of the accommodations provided, we conclude that the evidentiary error was harmless.

B

Lastly, the plaintiff claims that the improper admission of hearsay statements of union delegates under § 8-3 (1) (D) of the Connecticut Code of Evidence was harmless because the statements were cumulative of properly admitted evidence. We agree.

Kovachich *v.* Dept. of Mental Health & Addiction Services

The Appellate Court summarized the relevant facts as follows. "On March 7, 2018, during the plaintiff's testimony, the plaintiff's counsel sought to admit into evidence [emails] among the plaintiff, two union delegates, Donna Stoll and Paul Cummings, and others. The defendant's counsel objected on the basis that the [emails] contained hearsay, and the plaintiff's counsel responded: 'That's fine, Your Honor, because . . . Cummings and . . . Stoll . . . are going to testify. . . . So we'll—to the extent that there's something that needs to come in from them, will be heard from them.' Despite that response, the trial court stated that the [emails] may be admissible 'given the broadening of our Code of Evidence,' and directed the plaintiff's counsel to ask the plaintiff to identify Stoll and Cummings."[24] *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 362. The plaintiff's counsel elicited testimony that Stoll and Cummings were union delegates and employees of the defendant. See id., 362–63.

The trial court overruled the defendant's objection and admitted the emails as a full exhibit (exhibit 4). "Exhibit 4 contained Stoll's and Cummings' responses to the plaintiff's communication regarding a 'continued scent noted on' a coworker. Cummings, who testified that he was employed by the defendant as a psychiatric social worker and later a community clinician, responded to the plaintiff's [email] thread by stating: 'I believe [that

_____

[24] The trial court was referring to subparagraph (D) of § 8-3 (1) of the Connecticut Code of Evidence, which provides in relevant part that a statement is "not excluded by the hearsay rule" if it is "offered against a party and is . . . a statement by the party's agent, servant or employee, concerning a matter within the scope of the agency or employment, and made during the existence of the relationship . . . ." This provision was added to the Code of Evidence in 2018 to "[adopt] the modern rule" that the proponent of the statement need not offer "proof that the declarant was authorized to speak on behalf of the employer or principal." Conn. Code Evid. § 8-3, commentary.

Kovachich *v.* Dept. of Mental Health & Addiction Services

the Brief Care Unit] is designated as [scent-free] and staff should adhere to this every day.' '' Id., 363.

"It is well established that if erroneously admitted evidence is merely cumulative of other evidence presented in the case, its admission does not constitute reversible error." *Swenson* v. *Sawoska*, 215 Conn. 148, 155, 575 A.2d 206 (1990). "In determining whether evidence is merely cumulative, we consider the nature of the evidence and whether any other evidence was admitted that was probative of the same issue as the evidence in controversy." *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, supra, 308 Conn. 23.

The emails contained in exhibit 4 were cumulative of Stoll's and Cummings' in-court testimony regarding certain employees' repeated disregard of the scent-free designation on the Brief Care Unit. Stoll testified that there were some employees who "just didn't know that . . . their scent was affecting [the plaintiff]" and that these employees would arrive at work scented. According to Stoll, one employee would arrive at work wearing a discernable scent "every night," and another employee would arrive at work scented because "her clothes . . . maintained the scent. Even if she didn't, her clothes did.''[25]

Cummings testified that, even though the Brief Care Unit had been designated as scent-free, "[p]eople sensitive to fragrances [were] still being bothered by scents."

---

[25] The Appellate Court determined that the trial court improperly permitted Stoll to testify regarding the following hearsay statement of one of the defendant's employees: " 'I just put some perfume on. I hope it doesn't bother you.' " *Kovachich* v. *Dept. of Mental Health & Addiction Services*, supra, 199 Conn. App. 364; see id., 365–67. We conclude that this evidentiary error was harmless because it was cumulative of Stoll's in-court testimony that the employee had applied perfume during the lunch break. Stoll testified that, when she spoke to the employee "before lunch . . . she was scent-free," but, when Stoll spoke to the same employee again after lunch, "[the employee] had a fragrance on, and [Stoll] assum[ed] it was perfume because it was quite strong . . . ."

Kovachich *v.* Dept. of Mental Health & Addiction Services

Cummings confirmed that "one of the problems was [that there were] repeat offenders" who disregarded the scent-free designation. Cummings' testimony was corroborated by the minutes from various committee meetings documenting that the recurrent problem with scent exposures on the Brief Care Unit frequently had been discussed.

Additionally, the plaintiff's former supervisor, Janice Choiniere, testified that there were occasions when some employees would arrive at work wearing a scented product, particularly those employees who typically did not work in the Brief Care Unit. According to Choiniere, there was "some frustration on the [Brief Care] [U]nit because . . . other staff [were] disrespectful" of the scent-free designation. Finally, the plaintiff testified in depth regarding numerous incidents in which employees arrived to work on the Brief Care Unit wearing a noticeable scent. Contemporaneous evidence memorializing these incidences, such as email communications and incident reports, also was admitted into evidence.

In light of the foregoing evidence, which was largely uncontested,[26] we conclude that the improper admission of exhibit 4 was cumulative of properly admitted evidence and, therefore, harmless. See, e.g., *Duncan* v. *Mill Management Co. of Greenwich, Inc.*, supra, 308 Conn. 24 (improper admission of subsequent remedial measures was harmless because it "was cumulative of evidence that properly was introduced during the examination of other witnesses"); *Fink* v. *Golenbock*, 238 Conn. 183, 210–11, 680 A.2d 1243 (1996) (improper admission of expert report was harmless because it was cumulative of expert witness' in-court testimony).

[26] The defendant's designated witness, Wilson, did not dispute that some employees failed to comply with the scent-free designation on the Brief Care Unit but maintained that, "overall, most people tried to comply with it so [the accommodation] was effective."

Kovachich *v.* Dept. of Mental Health & Addiction Services

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to consider the defendant's claim that the trial court improperly found that it had violated CFEPA by providing insufficient accommodations and by failing to engage in the interactive process required thereunder, its claim concerning the amount of attorney's fees, and the plaintiff's remaining claims.

In this opinion McDONALD, MULLINS, KAHN and KELLER, Js., concurred.


ROBINSON, C. J., dissenting. I respectfully disagree with the majority's conclusion that the trial court did not abuse its discretion in admitting exhibits 12, 13, and 14 into evidence during a bench trial, after which the court concluded that the defendant, the Department of Mental Health and Addiction Services, had violated the rights of the plaintiff, Virlee Kovachich, under the Connecticut Fair Employment Practices Act (act), General Statutes § 46a-51 et seq. Instead, I agree with the Appellate Court's well reasoned opinion, in which it concluded that the letter and emails contained in those three exhibits were settlement communications inadmissible under § 4-8 of the Connecticut Code of Evidence.[1] See *Kovachich* v. *Dept. of Mental Health & Addiction Services*, 199 Conn. App. 332, 346, 350, 236 A.3d 219 (2020). Because I would affirm the judgment of the Appellate Court reversing the judgment of the trial court; see id., 367; I respectfully dissent.

_____

[1] Section 4-8 of the Connecticut Code of Evidence provides: "(a) General rule. Evidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim.

"(b) Exceptions. This rule does not require the exclusion of:

"(1) Evidence that is offered for another purpose, such as proving bias or prejudice of a witness, refuting a contention of undue delay or proving an effort to obstruct a criminal investigation or prosecution, or

"(2) statements of fact or admissions of liability made by a party."

Short of a change to the rules of evidence, I believe that this court would have to determine that the statements in exhibits 12, 13, and 14 are not offers to settle in order to conclude that they were admissible. As the majority opinion aptly explains, " '[e]vidence of an offer to compromise or settle a disputed claim is inadmissible on the issues of liability and the amount of the claim.' " Part I of the majority opinion, quoting Conn. Code Evid. § 4-8 (a). However, "other reasons will also suffice *as long as they are relevant to some issue other than liability* or damages." (Emphasis added.) E. Prescott, Tait's Handbook of Connecticut Evidence (6th Ed. 2019) § 4.19.4, p. 203. In this vein, the plaintiff argues that the exhibits were evidence of her efforts to engage in the "interactive process" required by the act; see *Curry* v. *Allan S. Goodman, Inc.*, 286 Conn. 390, 416, 944 A.2d 925 (2008); as conciliation efforts between the disabled individual and the employer aimed at identifying the individual's precise limitations and potential reasonable accommodations by the employer to aid the individual in overcoming those limitations. Specifically, the plaintiff argues that, because a failure to engage in the interactive process does not, standing alone, prove a violation of the act, the trial court properly admitted the exhibits for a purpose other than liability. I disagree with this argument. Although the plaintiff correctly observes that a failure to engage in the interactive process, *alone*, does not constitute independent grounds for liability; see *Sheng* v. *M&TBank Corp.*, 848 F.3d 78, 86–87 (2d Cir. 2017); it does not follow that the failure to engage in the interactive process is a matter entirely distinct from the liability inquiry as a matter of law. See *Snapp* v. *United Transportation Union*, 889 F.3d 1088, 1097 (9th Cir. 2018) ("[m]ost circuits have held that liability ensues for failure to engage in the interactive process when a reasonable accommodation would otherwise have been possible" (internal quota-

Kovachich *v.* Dept. of Mental Health & Addiction Services

tion marks omitted)), cert. denied sub nom. *Snapp* v. *Burlington Northern Santa Fe Railway Co.*, U.S. , 139 S. Ct. 817, 202 L. Ed. 2d 577 (2019); *McBride* v. *BIC Consumer Products Mfg. Co.*, 583 F.3d 92, 100– 101 (2d Cir. 2009) (plaintiff must establish that reasonable accommodation was possible in addition to establishing employer's failure to engage in interactive process). Section 4-8 (a) of the Connecticut Code of Evidence does not exclude settlement offers only on issues that can be the *sole cause* of liability but, rather, simply excludes settlement offers on issues of liability more generally. As such, I would not conclude that evidence of engaging or failing to engage in the interactive process could properly be considered as "another purpose" pursuant to § 4-8 (b) (1) of the Connecticut Code of Evidence.

Looking beyond the plain language of § 4-8 of the Connecticut Code of Evidence, I find especially persuasive the policy considerations raised by the Appellate Court in its discussion of General Statutes § 46a-83 (j),[2] which governs the confidentiality of proceedings before the Commission on Human Rights and Opportunities (commission), and General Statutes § 46a-84 (e),[3] which

[2] General Statutes § 46a-83 (j) provides: "No commissioner or employee of the commission may disclose, except to the parties or their representatives, what has occurred in the course of the commission's processing of a complaint, provided the commission may publish the facts in the case and any complaint that has been dismissed and the terms of conciliation when a complaint has been adjusted. Each party and his or her representative shall have the right to inspect and copy documents, statements of witnesses and other evidence pertaining to the complaint, except as otherwise provided by federal law or the general statutes."

[3] General Statutes § 46a-84 (e) provides: "A human rights referee or attorney who volunteers service pursuant to subdivision (18) of section 46a-54 may supervise settlement endeavors. In employment discrimination cases only, the complainant and respondent, with the permission of the chief referee, may engage in alternate dispute resolution endeavors for not more than three months. The cost of such alternate dispute resolution endeavors shall be borne by the complainant or the respondent, or both, and not by the commission. *Any endeavors or negotiations for conciliation, settlement or alternate dispute resolution shall not be received in evidence.*" (Emphasis added.)

Kovachich *v.* Dept. of Mental Health & Addiction Services

governs efforts to resolve matters pending before the
commission by settlement or alternative dispute resolu-
tion. See *Kovachich* v. *Dept. of Mental Health & Addic-
tion Services*, supra, 199 Conn. App. 352. As the
commission noted in its amicus brief to the Appellate
Court,[4] the act " 'relies heavily on conciliation as a
means of eliminating discriminatory employment prac-
tices. To further this process, the act bars absolutely
the disclosure of conciliation endeavors and postpones
disclosure of complaints until they have been dismissed
or adjusted. The obvious purpose of providing confiden-
tiality is to encourage compromise, [whereas] prema-
ture disclosure might force the parties into public
postures, which would inhibit or prevent settlements.' "
*Kovachich* v. *Dept. of Mental Health & Addiction Ser-
vices*, Conn. Appellate Court Briefs & Appendices, Octo-
ber Term, 2019, Amicus Curiae Brief pp. 5–6, quoting
*Green* v. *Freedom of Information Commission*, 178
Conn. 700, 703, 425 A.2d 122 (1979). I agree with the
commission that "[w]eakening the safeguards [that]
generally preclude parties from offering settlement or
compromise evidence into the record would have a
chilling effect on the commission's mediation efforts,
eviscerating the conciliatory purpose and expeditious
nature of the commission's administrative process."[5]

[4] In its amicus brief to the Appellate Court, the commission emphasized
the importance of confidentiality regarding its mediation process. See
*Kovachich* v. *Dept. of Mental Health & Addiction Services*, Conn. Appellate
Court Briefs & Appendices, October Term, 2019, Amicus Curiae Brief pp.
5–9. However, in its amicus brief to this court, the commission shifted
gears somewhat to discuss the competing interests between "safeguarding
a confidential space in which parties to a discrimination complaint may
candidly negotiate without concern of incurring new liability" and "ensuring
that employees may seek accommodations for their disabilities . . . if those
discussions go astray," arguing that confidentiality should not extend beyond
the mediation process.

[5] Although § 46a-84 (e) applies only to evidence introduced in public hear-
ings held by the commission, both §§ 46a-84 (e) and 46a-83 (j) demonstrate
efforts to ensure confidentiality and to encourage compromise throughout
the pendency of a complaint before the commission.

Kovachich *v.* Dept. of Mental Health & Addiction Services

*Kovachich* v. *Dept. of Mental Health & Addiction Services*, Conn. Appellate Court Briefs & Appendices, supra, Amicus Curiae Brief p. 9.

"Beyond these observations, [o]rdinarily, I would write a comprehensive dissenting opinion with a thorough discussion of the applicable law and a detailed review of the record. The Appellate Court has, however, issued a comprehensive and well reasoned opinion, authored by Judge [Alvord], which provides a full explication of the . . . record and governing legal principles in this case. . . . In the interest of aiding in the discharge of this court's institutional obligation to provide timely decisions to litigants and the public, I adopt Judge [Alvord's] excellent opinion as a complete statement of my reasoning for respectfully dissenting from the judgment of this court." (Internal quotation marks omitted.) *State* v. *Dawson*, 340 Conn. 136, 166, 263 A.3d 779 (2021) (*Robinson, C. J.*, dissenting); accord *Dept. of Transportation* v. *White Oak Corp.*, 319 Conn. 582, 622, 125 A.3d 988 (2015) (*Robinson, J.*, dissenting); see also *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, 326 Conn. 55, 62, 161 A.3d 545 (2017).

Because I would affirm the judgment of the Appellate Court, I respectfully dissent.